The following constitutes
the order of the court. Signed March 31, 2014

_____
William J. Lafferty, III
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>STEPHANIE JO HARRIMAN,<br><br>        Debtor. | No. 12-49371<br>Chapter 11 |

**MEMORANDUM OF DECISION**

    Stephanie Jo Harriman (the "Debtor") filed the above-captioned Chapter 11 case on November 21, 2012. In an initial Status Conference Statement for Chapter 11 Case filed December 26, 2012, the Debtor made clear her intent to use the provisions of the Bankruptcy Code to "value" the secured claim held by Wells Fargo Bank National Association ("Wells Fargo") against her real property, located at 3905 Happy Valley Road, Lafayette, California (the "Property"), at the current fair market value of the Property, and thereby reduce the amount of Debtor's obligation to Wells Fargo. Status Conference Statement at 1-2, Dec. 26, 2012, ECF No. 24. The Property includes the Debtor's residence and other

structures that the Debtor used for commercial purposes as of the commencement of this case.

On March 12, 2014, the Motion to Value Collateral (the "Motion") filed by Stephanie Jo Harriman came for rehearing before this Court. Judson H. Henry appeared on behalf of the Debtor, and Matthew R. Clark appeared on behalf of Wells Fargo. At the conclusion of the hearing the Court took the matter under submission. After due consideration of the arguments presented in the parties' briefs and at oral argument, and in light of the recent decision by the Bankruptcy Appellate Panel ("BAP") in *Wages v. J.P. Morgan Chase Bank, N.A., (In re Wages)*, BAP No. ID-12-1397-JuKiKu, slip op. at 2, 13 (B.A.P. 9th Cir. Mar. 7, 2014), the Court determines that Section 1123(b)(5) of the United States Bankruptcy Code (the "Code") prohibits the Debtor from modifying Wells Fargo's secured claim as proposed in the Motion. The Motion is therefore denied.

## BACKGROUND

The Debtor filed the Motion on August 21, 2013; Wells Fargo filed its opposition to the Motion on September 4. The Debtor filed a response in support of the Motion on September 11, 2013. The matter was originally heard on September 18.

The Motion raised two issues: (1) Whether the Debtor may use Sections 506 and 1123(b)(5) of the Code to modify Wells Fargo's secured claim by reducing the value of the lien to the fair market value of the claimant's collateral?, and (2) Assuming that the answer to the first question is "yes," what is the fair market value of the claimant's collateral? Because the Court has now

2

Case: 12-49371    Doc# 105    Filed: 03/31/14    Entered: 04/01/14 12:16:42    Page 2 of 11

twice determined that the answer to the first question is "no," it has not reached the factual question of the current fair market value of the Property.

In a chapter 11 bankruptcy case, a claim can be bifurcated into secured and unsecured portions. 11 U.S.C. § 506 (2012). Section 1123(b)(5) of the Code ("Contents of plan") provides that "a plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." *Id.* § 1123(b)(5). This exception is known as the anti-modification provision. Were the Debtor to succeed in this argument, Wells Fargo would be left with two claims: (a) a secured claim equal to the value of the collateral (and entitled to the enhanced treatment that the Code requires for secured claims) and (b) an unsecured claim for the remainder of the amount due.

The Debtor argued at the initial hearing that the anti-modification provision does not prevent modification of Wells Fargo's secured claim because the "principal residence" requirement of the statutory provision is not met. This requirement is not met because the Property has multiple uses in addition to the Debtor's principal residence. Mot. To Value Collateral at 13, Aug. 21, 2013, ECF No. 57. The Property includes two structures, a house and a cottage. The cottage has been rented continuously for the last five years. An office and a storage facility are also currently maintained on the Property, and are used by a third party for commercial purposes. The Debtor therefore argued that because the lender's collateral included property that was not limited to the

3

Debtor's residence, Section 1123(b)(5)'s limitations did not apply. The Debtor cited cases out of this circuit that have held, under a variety of fact patterns, that any use of the collateral in addition to the debtor's residence automatically exempted the subject property from the limitations of Section 1123(b)(5). Mot. To Value Collateral at 10-12, Aug. 21, 2013, ECF No. 57. The Debtor attempted to bolster the "equities" of this result by suggesting that it be limited to those circumstances in which an additional use of the subject collateral were clearly foreseeable, based upon the nature of the property. *Id.* at 9-10.

    The Bank countered that the Court's analysis should be guided by the parties' intentions and reasonable expectations at the time the loan was negotiated. Opp'n to Debtor's Mot. To Value Collateral at 7, Sept. 4, 2013, ECF No. 61. Since the Property was used exclusively as a residence at the time of the loan origination, and there was no contemporaneously-expressed intention by the Debtor to use the Property for a commercial purpose, Wells Fargo understandably treated the proposed loan as a purely residential loan, and neither subjected the proposed transaction to the heightened review and scrutiny that a commercial loan would have received, nor imposed on this transaction the higher interest rate or additional loan covenants that would have been required had Wells Fargo known that the Property was to be used for a commercial purpose. *See id.* Wells Fargo argued that allowing the Debtor to change the result obtainable under Section 1123(b)(5) by a later modification of the use of the Property would invite abuse by unscrupulous debtors, and would be contrary to the stated public

4

policy behind the anti-modification provisions, i.e., to promote the continued availability of capital for home loans by reassuring lenders that such loans could not be modified. *See id.*

At the conclusion of the argument on September 18, the Court orally denied the Motion. The Court concluded that there was no binding authority on the question in this circuit, but found Wells Fargo's position, that the analysis should focus on the parties' intentions and expectations at the time of the loan origination, to be more in keeping with the purpose and intent of the statute, and not obviously at odds with the language of the provision. For clarity, the Court entered an Order and Memorandum of Decision on this matter on October 1, 2013.

On October 15, 2013, the Debtor filed a Notice of Appeal, and also filed a Motion for Leave to Appeal Interlocutory Order. A status conference was held on November 13, 2013, and for the reasons stated below, the Court vacated its October 1 Memorandum of Decision and Order, and ordered the parties to submit supplemental briefs to the Court with respect to an issue that had not been addressed in the initial pleadings on the Motion. During this status conference, the parties informed the Court that they were engaged in settlement discussions and that they were cautiously optimistic that those discussions might lead to a consensual resolution of this matter. At a subsequent status conference held on January 8, 2014, the parties advised that they had not reached a settlement. The Court accordingly went forward with the rehearing on the Motion on March 12, 2014.

## DISCUSSION

As stated previously, the Court's Memorandum of Decision of October 1 determined that the primary consideration when evaluating whether the exclusion of section 1123(b)(5) applies is the reasonable expectations of the parties at the time of the loan transaction. Mem. Of Decision, Oct. 1, 2013, ECF No. 66. When completing the Memorandum, the Court considered case law which addressed the application of the anti-modification provision to multi-use properties. *See*, *e.g.*, *Scarborough v. Chase Manhattan Mortgage Corp. (In re Scarborough)*, 461 F.3d 406, 412 (3d Cir. 2006) (finding if at the time of the loan transaction the nature of the real property is income producing rental property, the claim can be modified), *Lomas Mortgage, Inc. v. Louis*, 82 F.3d 1, 1-2 (1st Cir. 1996) (finding section "1322(b)(2) does not bar modification of a secured claim on a multi-unit property in which one unit is the debtor's principal residence and the security interest extends to the other income producing units"). The Court principally relied on a 1996 BAP decision, *Lievsay v. Western Fin. Savings Bank, F.S.B. (In re Lievsay)*, 199 B.R. 705 (B.A.P. 9th Cir. 1996), when determining that the expectation of the lender at the time of the loan transaction was important. *Id.* at 709 (finding section 1123(b)(5) bars modification partially because the lender did not rely on the debtor's use of the property as his office as additional security when making the loan).

However, at the time the Court entered the Memorandum it was unaware of (and the parties had not cited in their briefs in connection with the Motion) two Bankruptcy Appellate Panel

decisions published in 2011 which hold that, at least for purposes of determining *whether* the collateral was the debtor's principal residence for Section 1123(b)(5)'s purposes, the relevant date for the analysis is the petition date. *See BAC Home Loans Servicing, LP v. Abdelgadir (In re Abdelgadir)*, 455 B.R. 896, 903 (B.A.P. 9th Cir. 2011), *Benafel v. One W. Bank, FSB (In re Benafel)*, 461 B.R. 581, 586-87 (B.A.P. 9th Cir. 2011). Concerned that these two cases established a rule of more sweeping applicability, i.e., that the BAP had held that the relevant date for assessing the parties' rights and obligations under Section 1123(b)(5) *for all purposes* (including characterization of the collateral securing the claim), should be the petition date, and not the loan origination date, the Court vacated its Memorandum of Decision and its Order on November 26, 2013, in order to permit the parties to address and the Court to consider the implications of the *Benafel* and *Abdelgadir* decisions to this matter.

The Debtor filed its supplemental brief on this subject on February 12, 2014. The Debtor argued that, taken together, *Benafel* and *Abdelgadir* stand for the proposition that the correct date for assessing all of the parties' respective rights and obligations concerning secured claims under Section 1123(b)(5) is the petition date, and that nothing in either opinion suggested that the BAP was limiting this analysis solely to the question whether the property was in fact the debtor's residence on the petition date. Supplemental Br. in Supp. of Mot. To Value Collateral at 6-7, Feb. 12, 2014, ECF No. 94.

Wells Fargo filed its Supplemental brief on February 26, 2014. Although conceding that *Abdelgadir* and *Benafel* could stand for the proposition that the petition date is the only relevant date for Section 1123(b)(5)'s purposes, Wells Fargo also argued that nothing in those opinions clearly overruled *Lievsay*, and that *Lievsay's* reliance on the expectations of the parties at the time of the transaction provided the more sensible and fair rule. Wells Fargo Bank, N.A.'s Supplemental Br. In Supp. Of Its Opp'n To Debtor's Mot. To Value Collateral at 4-5, Feb. 26, 2014, ECF No. 95.

Wells Fargo also cited the Court to an opinion that had also not previously been cited or discussed, *In re Wages*, 479 B.R. 575 (Bankr. D. Idaho 2012). In *Wages* the Bankruptcy Court held that the most intelligent and practical reading of the language of Section 1123(b)(5)'s anti-modification language requires that a court pose only two questions: (1) was the loan secured only by an interest in real property, and (2) was that property the Debtor's principal residence? *Id.* at 577, 579. If the answer to both of those questions is "yes," that ends the inquiry, the provision applies to bar modification of the claim, and the court need not inquire further as to "additional" uses or characterizations of the collateral. *Id.* Wells Fargo commended this case to the Court's consideration as a plausible and sensible resolution of this unsettled question.

Ironically, both the Debtor and Wells Fargo proved to be quite prescient in their arguments. On March 7, 2014 the BAP decided the appeal in *Wages,* affirming the Bankruptcy Court's determination that the best resolution of this unsettled issue was to be found in

8

the language of the statute. *Wages v. J.P. Morgan Chase Bank, N.A. (In re Wages)*, BAP No. ID-12-1397-JuKiKu, slip op. at 2, 13 (B.A.P. 9th Cir. Mar. 7, 2014). Modifying only slightly the two part test adopted by the Bankruptcy Court, the BAP concluded that "the prohibition against modification of the rights of the holders of secured claims in § 1123(b)(5) has three distinct requirements: first, the security interest must be in real property; second, the real property must be the only security for the debt; and third, the real property must be the debtor's principal residence." *Id.* at 7. Accordingly, "the anti-modification exception applies to any loan secured only by real property that the debtor uses as a principal residence property, even if that real property also serves additional purposes." *Id.* at 13.

This Court believes the Bankruptcy Appellate Panel's interpretation of the anti-modification provision is the most consistent and sensible reading of the statute.

Moreover, the *Wages* decision is also directly on point regarding what date is the appropriate date to use when determining if the anti-modification provision applies–as the Debtor urged the Court to conclude, the relevant date is the petition date. Supplemental Br. in Supp. of Mot. To Value Collateral at 6-7, Feb. 12, 2014, ECF No. 94. However, that point is of no assistance to the Debtor here, because the BAP's more fundamental holding, that courts should not look beyond the questions whether the collateral is only real property, and is the debtor's residence, in applying Section 1123(b)(5) limitations, eliminates any argument about "additional" uses of the collateral.

9

In this case, Wells Fargo's claim was secured only by real property. Opp'n to Debtor's Mot. To Value Collateral, Ex. A, Sept. 4, 2013, ECF No 61-1. This real property was the Debtor's principal residence on the date the bankruptcy petition was filed. Harriman Decl. at 2, Aug. 21, 2013, ECF No 57-1. Consequently, the anti-modification provision applies to Wells Fargo's claim.

Decisions published by the Bankruptcy Appellate Panel provide expert guidance and create consistency within the jurisdiction. *See, e.g, Philadelphia Life Insurance Company v. Proudfoot (In re Proudfoot)*, 144 B.R. 876, 878-79 (B.A.P. 9th Cir. 1992) (discussing the purpose of the bankruptcy appellate panel). Consequently, this Court will follow the Bankruptcy Appellate Panel's guidance and conclude that the anti-modification provisions of Section 1123(b)(5) prohibit the Debtor's attempts to modify Wells Fargo's secured claim in this case. And, as the BAP pointed out in *Wages*, if the plain meaning of the anti-modification provision produces undesirable results, the provision can be amended by the legislature. *Wages v. J.P. Morgan Chase Bank, N.A., (In re Wages)*, BAP No. ID-12-1397-JuKiKu, slip op. at 12 (B.A.P. 9th Cir. Mar. 7, 2014).

**CONCLUSION**

For all of the foregoing reasons, the Motion to Value Collateral must be denied. The Court will enter an Order consistent with this decision.

**\*\*END OF MEMORANDUM\*\***

| | |
|---|---|
| 1 | **COURT SERVICE LIST** |
| 2 | |
| 3 | Stephanie Jo Harriman<br>3905 Happy Valley Rd.<br>Lafayette, CA 94549 |
| 4 | |
| 5 | Judson H. Henry<br>Law Office of Judson H. Henry<br>6041 Brookside Circle |
| 6 | Rocklin, CA 95677 |
| 7 | Matthew R. Clark<br>PITE DUNCAN, LLP |
| 8 | 4375 Jutland Drive, Suite 200<br>P.O. Box 17933 |
| 9 | San Diego, CA 92177-0933 |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |